Call our first case for the afternoon, Travelers Indemnity vs. Stengel, et al. I may have pleased the court, counsel. My name is Peter Kennedy. I represent the appellant travelers. I'll refer to my client as travelers in argument, your honor. And we'd like to present our main argument for 10 minutes and then allow my co-counsel to make rebuttal for the remaining five minutes. Travelers brought this action in the district court under a Pennsylvania statute, of course, the Uniform Contribution Act, which defines joint tort feasors as two or more tort feasors causing the same injury. And that statute allows one tort feasor, one joint tort feasor to bring that action. At the outset, we also believe that certain provisions of the restatement of second, restatement second of torts, which have been followed by the state courts and by this court are relevant. And those relate to the fact that in some circumstances, apportionment of harm is appropriate where there are distinct harms. Let me ask you about the distinct harms. You, in your briefing, indicate that you distinguish foils and say, well, that was a motor vehicle driver and a doctor, very different duties couldn't possibly be the same. So, what would your position be if we had a case where there were two doctors and one arguably did something wrong in treating somebody's varicose veins, and when they went in to have that checked again, the next doctor, in a drunken stupor, sawed the person's leg off. Would you say that the varicose vein treatment was the same as the wrongful amputation? No, I would draw a distinction there, and I think that hypothetical is more analogous to the Voiles-Las Bregado cases than a situation like Capone v. Donovan, which is a Pennsylvania State Court case where three negligent physicians all treated an arm, and the arm was left with a permanent injury, and the plaintiff was unable to say which malpractice caused that permanent injury. So, I think... Can't you say pretty clearly here that the problem that resulted in the enormous liability was the blowing of a filing deadline in the Dragonetti suit? I mean, excuse me, in the suit that was brought against the... The Sanfords for the Dragonetti, and your question, Your Honor, is whether that was superseding somehow or an overriding cause? Sure. Why isn't that akin to the amputation of a leg? I mean, it cuts off everything, so to speak, in a legal sense. It's pretty dramatic. Well, I think... And it sort of gets into causation, but I believe the case or the hypothetical that you posed is one in which it's not foreseeable and really extraordinary, if you will, that the subsequent physician cut off the arm or the leg, and unlike our situation where the RICO Act, and in continuing the RICO Action, created the harm that led... Don't speak in terms of creating the harm. Speak in terms of... Let's stick with foreseeability. What is it about what Mr. Stangle and Barry did that made Mr. DeLuca's default something they should have seen? Well, I think that when looking back, which is a proper... Looking back from the default judgment, it was certainly foreseeable from the standpoint of Mr. Barry and Mr. Stangle that their decision and their advice to their clients to, again, begin the action and to continue the action was a foreseeable result. Their negligence was a foreseeably caused... The lawsuit, which is... Do you... And that's a direct consequence. That lawsuit is a direct consequence as opposed to, I think, the situation, which is really two independent acts, again, more like the Voiles-Las Vergadas cases. The lawsuit may be the consequence, but the loss of the lawsuit may not be. Do you acknowledge that the Sanfords had defenses to the Draganetti suit? In the words of the third attorney who was deposed, he said there were certain defenses that could have been raised. And we can hypothesize and speculate concerning what might have happened had the answer been filed on time and the default judgment had not been answered. But that's not what happened. Don't you have to say, don't you have to have us believe that there were no defenses in order to succeed? Because then the injury flowed directly from the filing of the RICO complaints and there was nothing anybody could do so that, indeed, DeLuca's actions weren't intervening. Don't you have to have that in your arsenal, i.e. that there was no way they could fight the Draganetti suit? First of all, Your Honor, I don't accept that that's what we have to prove, but obviously our expert opines that the result would have been the same had Mr. DeLuca filed an answer. But the underlying action is legal malpractice. So we believe that the merits of the Draganetti action or what might have happened are really relevant. The only questions are whether the three elements of the legal malpractice case, which we believe have been met in this case. So I don't believe that proof of the eventual success or failure of the Draganetti action controls that we have to establish that as part of our inquiry. Now, we have to predict the difficulty of this case is multifolded. The case within a case within a case. We have to predict, first of all, what the Pennsylvania Supreme Court would decide on this question as to whether or not they're joint tort feasors. That's what we need. Following harsh, if you will, but... I want to try to get a basic fact established here and see if you agree with me. If liability under Pennsylvania law, if liability could be apportioned among the tort feasors, you would lose, correct? I believe that is true, although that issue is not before the court, but I agree... Why isn't it before the court? Well, well... You can try and ascertain with the law. Again, it's not before the court, but I believe that apportionment of the harm, which is the $3 million verdict, is not possible in this case. That there is no, under the restatement, any reasonable basis for apportioning that harm. Okay, so you say the harm here can't be apportioned. That's correct. All right, that's a different answer. Right, right. And then, Your Honor, what's the third? The third is, what's your best case under Pennsylvania law? Our best case under Pennsylvania law is that we pursued, proceed under trial so that... No, your best opinion. Best opinion. What opinion are you hanging your hat on? Harsh v. Petrol is clearly the most significant case because that case involves separate duties, activities or conduct that are severable in time, and in a situation where there were arguably two injuries or the aggravation of an injury, going back to Judge Gordon's question, the Pennsylvania Supreme Court went through the principles that I began to discuss and said, under these circumstances, we believe that the two are joint tortfeasors and that the procedural circumstances were somewhat different and harsh, but that the negligent driver was responsible for the entire harm. So that's our best case, Your Honor. But there's certainly precedent in the third circuit. But clearly there was one injury there, death. Well, that's right. I think the other side argued that under the crashworthiness, however, in order to make a claim under crashworthiness, there has to be an enhancement of the injury. So that's, I think, what the Supreme Court of Pennsylvania was wrestling with. But it considered... I'm just thinking. You understand. Well, so that was the difficulty. And the Supreme Court in that case extended a contribution to that scenario, even though, strictly speaking, there was one injury, which was the collision, and then the death caused by the fire. And there's one other preliminary question you need to get over. I was going to... Go ahead, Your Honor. Right? As to whether or not legal malpractice is covered.  Whether legal malpractice is covered under the Uniform Contribution to Crime Fees. I think that's... You don't even think that's worthy of discussion? I mean, counsel for Mr. Berry in a case in the Middle District had no difficulty arguing that a legal malpractice is a proper claim under the Uniform Contribution Act. The only problem for us is the Supreme Court hasn't decided it yet. Well, there's... I mean, the precedent is... Clearly, the Contributory Negligent Act talks about physical injury or the Delay Damages Rule talks about physical injury. And we think it's pretty clear under a traditional understanding of injury that that includes not only physical injuries, but any invasion of a legally protected right, which a legal malpractice, just like fraud or deceit, which is covered under the Limitation Statute. The other thing I was going to say, Your Honor, about harsh versus petrol is the Supreme Court, I think, looked to the equitable principles under contribution and said that this is an equitable doctrine, it's not a recovery for the underlying tort, and that we think the fair result here is to allow contribution.  Thank you. May it please the Court. I am Daniel Ryan for Robert Stengel, and with the Court's permission, during my allotted time, I will address the issue of whether the parties are joint-tort feasors, and Mr. Lefkoe will talk about the causation issue. Respectfully, Your Honors, I think that the law is clear here, and Judge Tucker's decision is also correct with respect to her analysis of whether these parties are joint-tort feasors. Judge Tucker appropriately adopts the case law of Pennsylvania, which has looked at what factors are to be reviewed by a court in deciding whether a party is a joint-tort feasor. And the Voiles Court and the Las Pregadas Court, they set forth the factors, and those factors, contrary to the suggestion by my opponents, really haven't changed over the years, they haven't been rejected over the years, and in fact, they have been adopted, not only by the state courts, but also by the district court in analyzing this issue. Why don't you go straight to Mr. Kennedy's assertion that this is a circumstance where what your client and Mr. Berry did led directly to the, and foreseeably to, the Draganetti action and the default? Very well, Your Honor, and I know Mr. Lefkoe will address this, too, when he talks about the proximate causation piece, but the conduct of these attorneys, separate in time, different duty owed, there's no way that in this situation, that when Robert Stengel was involved in the representation of these clients, that he could have foreseen that seven, eight, nine years down the road, there would be a verdict against those clients in an amount exceeding $3 million, directly caused, I would suggest, Your Honor, by the default of Mr. DeLuca. Mr. DeLuca, one of the questions raised by the court during Mr. Kennedy's presentation was whether or not Mr. DeLuca has opined on the issue of whether he thought that there was a defense to the Draganetti claim. He did testify at his deposition that he believed very strongly that there was a defense. Let's assume for the sake of discussion that, let me back up, do we have to do, as Judge Rendell asked your opposing counsel, do we have to decide that there was no defense in order to find for travelers here? Would we have to say there was clearly no defense to the Draganetti suit? Or to the contrary, do you have to prove that there was a defense? Well, I would respectfully submit, Your Honor, that we don't, but we can. And the evidence that was before Judge Tucker was that the attorney who committed the default, who committed the negligence, testified that there were defenses to the claim. Take a step back when you say we don't. Stick with the legal point and not with the state of the case as it may be. Why don't you have to do that? Well, Your Honor, I think that the initial question becomes the issue of whether they're joint tortfeasors. And I think that with that question alone, they're not joint tortfeasors, and therefore the analysis doesn't follow down the road. Because of the severability in time of the actions of counsel, because of the difference in duty, Mr. Stengel's representation of the Sanfords was totally different than Mr. DeLucas. Just totally different. Qualitatively so, and Judge Tucker points that out. So... Speak to us in... Not so much with adverbs and adjectives as explaining why it's different. Yes, Your Honor. The difference in representation was with respect to Mr. Stengel's representation of the Sanfords, he was investigating a claim. He was doing research. He was analyzing whether it was appropriate to recommend to them or suggest to them that they proceed with the claim. He never entered an appearance. He never proceeded with the litigation, but he was representing them for a period of time before the lawsuit was filed pro se. The plaintiff's argument would be, and he did a terrible job of it, a ridiculously bad job of it, to bring a RICO case against some Board of Supervisors. Outrageous. And any competent lawyer would have known that that was outrageous. And it could only result in, particularly from municipal employees, in a pushback to try to recover monies that were spent to defend them against an outlandish RICO claim. So, if that were accepted as true, that this was just completely over the top, why wouldn't it be entirely foreseeable and a direct following on for there to be a Dragon Etty action and there to be liability on the Dragon Etty action? Well, Your Honor, I think again, it comes back to the issue of joint tort feasors, but in this particular case, I don't think that the facts would support that. I know Your Honor is asking me to suppose a situation where this was totally outrageous on the part of Mr. Stengel with respect to his representation. It's hard for me, frankly, to tease out the causation and the joint tort feasor stuff because it seems to me like they're pretty well intertwined, like the question for joint tort feasors is, can you apportion harm? And part of that is I'm really trying to draw you out and tell me without saying, because they're not joint tort feasors, why aren't they joint tort feasors? Very well, Your Honor. The difference in the, obviously, the severability in time, which is a factor set forth by the courts. The difference in duty. The duty with respect to Mr. Stengel's representation of the Sanfords, as we discussed,  criminal case, to be able to say, Mr. DeLuca's duty, on the other hand, was defending the claim. Totally different responsibility with respect to his clients. Sure, they all had a duty as lawyers to represent their clients well, but the nature of the duty in that situation was entirely different. One, investigating a claim. The other, defending, not only defending, but just following the procedural rules so as to prevent his clients from  the difference in those duties also speaks to the lack of opportunity for Mr. Stengel to guard against the negligence of Mr. DeLuca. There was no opportunity for him to do that in the future. Now, those are the voyles factors, but there's another aspect under Pennsylvania law where two or more negligent parties acting independently of each other and at different times and places may nevertheless be held to be joint tort feasors if their respective acts of negligence are each a proximate cause, which Mr. Lefkoe is going to get to, of a single injury that is incapable of apportionment as to damages. And if we were to conclude that there was no defense to the Dragonetti suit, then wouldn't there be here a single injury that by virtue of the initial actor's actions and the intent to stop it, basically, it was preordained that there was going to be this verdict? So don't we at least in that aspect have to address the merits of the Dragonetti suit? Your Honor, I don't believe so. And of course in this case we have Mr. DeLuca's just he took away any chance not only to defend the case, to reduce the damages, anything along those lines. So it's not quite the same. However, I would suggest to the Court that the analysis of Judge Tucker is on point here. That she said that this is a different injury. The injury, if you're going to say that Mr. Stengel was negligent, if he committed legal malpractice, the injury to his clients was their loss of the case when the motion to dismiss was granted by the lower court. That was their injury at that time. It was a wholly separate injury, or an aggravation of injury at least. It doesn't expose one to a Dragonetti act as some sort of a wrongful prosecution, wrongful use of a civil process claim. Well, Your Honor, I think that that would be true in every instance. Any time a complaint was filed. And I just, I think that when Judge Tucker concluded, and I think appropriately so, that the injury was different, that the injury was separate, or that the injury was at least an aggravation, the second part being an aggravation of the first, that that takes us out of the realm of the analysis that Judge Rendell was addressing. That that further supports her conclusion that these parties were not joint tort feasors, and therefore, there can't be a recovery. Mr. Ryan, isn't though the crux of this whole case not so much the default, but the filing of the frivolous suit against the supervisors? Okay. Mr. Ryan was going to... Yes, Your Honor. Isn't that the crux of the case? I don't think so. I really don't. Because I think there has to be analysis of the conduct of Mr. Stengel and compare that with the conduct of Mr. DeLuca. And they're not joint tort feasors, and therefore, I don't think that the filing of the initial claim becomes the crux of the case. Let me rephrase my question. If we conclude that the crux of the case was the filing of the suit, doesn't that make your client and Mr. Berry and Mr. DeLuca joint tort feasors? Not Mr. DeLuca, no, Your Honor. I can't agree with that respectfully. I think that the nature of the difference in time, the difference in opportunity to guard against, the different standards or different duties that were owed, and the different evidence that would have to be presented at trial would make them not joint tort feasors. Thank you, Your Honors. Good afternoon, Your Honors. Arthur Lefkoe for Kevin Berry and the Ledgwood Law Firm. I'd like to take head-on Judge Jordan's question, but in order to do that, I have to go back to, what's a Dragonetti case? A Dragonetti case, a wrongful use of civil proceedings case, is not engendered simply by the loss of a prior case. It requires proof that the action was brought without probable cause to believe it could succeed, or in a grossly negligent fashion, and in either case, for an improper purpose. And the statute specifically provides, with respect to probable cause, when a client has probable cause, and it says, if the client has probable cause, he has probable cause. In other words, that is an absolute defense to a Dragonetti case. Mr. Sanford says, I went to Mr. Stengel, and I went to Mr. Berry, and I said, do I have a case? And they said, you have a case. And that's what Stengel and Berry said, that they told him, you have a case. Did the district court make a finding as to that, and was it necessary for the district court to have made a finding? I don't recall whether there was a specific finding on that. There was a specific finding that Stengel was precluded from asserting the defenses because of the default. And in the opinion which was rendered in the lower court, in the state court, the state court opinion said, because of the default, it is established that there was no probable cause, that this case was brought for an improper purpose, and based on those determinations, Judge Ceperulo, the trial court judge, went ahead and entered a judgment. But the question that we've been presenting to others and to you as well is, does that mean that in order to get to where you'd like us to get, we have to say there was some decent defense, there was good faith? Well, I think you have to, all you need to say is that the opportunity, well, there certainly is a prime facie defense on the face of the statute, which is pleading reliance on advice of counsel. And the travelers asserts in this case, because it has to, that, well, also because it's true, that Sanford's conduct in bringing this action was based on advice of counsel. That's why they think there was malpractice, because that advice was bad. But if Sanford's action in bringing the case was based on a reliance on advice of counsel, then Sanford had an absolute defense to the Dragonetti case. And the only reason he couldn't bring it, couldn't raise that defense, is because the LUCA let a default judgment be entered. Now, under those circumstances, how could, I say this rhetorically, how can you say that Stengel or Berry's actions caused the entry of the Dragonetti judgment? They couldn't have, because the Dragonetti judgment can't happen without lack of probable cause and improper purpose and no defense of reliance on advice of counsel. And it's solely the conduct of the LUCA that causes that result to happen. Does it matter in this case at all that the state court, I think it was Bucks County, that the state court found, because there was a petition to reopen the judgment, that there was no meritorious defense? Does that matter? It matters a lot, but that's not what the court found. And if you want to look, Your Honor, at a joint appendix at 355, that is the actual opinion issued by the state court judge. He didn't say there was no meritorious defense. He said the papers failed to contain a meritorious defense. He said the papers were just... But there was no paper filed. He said the papers that were filed were just boilerplate. I'll read it to you. He said, But nonetheless, this court considered the amended pleadings and attached answer. The answer in new matter stated in very vague and general terms the defenses offered by appellants. Appellants merely provided a laundry list of defendants. New matter contained no factual averments which could have supported a legally meritorious defense. That's what the court said. He didn't say there weren't any good defenses. He said they just weren't offered. And not to kick a guy when he's down, but that was DeLuca again. That wasn't Berry and it wasn't Stengel who messed up that pleading. But we know that there are defenses because DeLuca in his deposition in this case testified, oh yes, I advised Mr. Sanford, he relied on me and I thought that there were good defenses to the case. Isn't that an odd position for you to take to say Mr. DeLuca fouled up 10 ways from Sunday, he didn't file on time and then when he did file it was messed up and weak, but you should believe him when he says there were defenses. Well, I don't think anybody's questioned his credibility. I think they may have. It's not a matter of credibility as in was the light green or red, it's just you're asking us to rely on his assertion that there were defenses as a legal matter. There were defenses that were valid and could be relied upon. Well, I think a stronger position is I'm asking you to rely on the fact that the statute says that reliance and advice of counsel is a defense and everybody in the case, including travelers, agrees that there was reliance and advice of counsel by Sanford in bringing the lawsuit. That's the whole claim against the lawyers here now. Take us back to the basic concept of proximate causation and foreseeability as it pertains here. Well, I think it's like every other case that the plaintiff has to prove both cause in fact and legal cause or proximate cause. I know that the plaintiff has in his or the appellant in his brief has suggested to you that under Pennsylvania law proximate cause has been eliminated and all we have left is cause in fact and the only what he's relying on there are the Pennsylvania suggested standard jury instructions which are not the law of Pennsylvania. There's even a district court case called Stasek v. Bell Helicopters in which Judge Robreno examines and says these are not the law of Pennsylvania and you read the introduction and the introductory note says these have not been adopted by the Supreme Court of Pennsylvania or anybody else. They're just our suggestions and in that case their suggestions are wrong. This court in Redland Soccer Club laid out the standards for causation and said as you would have suspected that you have to prove factual cause that is but for A did B happen and then you also have to prove proximate cause which means is even if you have factual cause is it simply too tenuous? Is the line too long from point A to point B to establish legal liability based on that causation a la Paul's graph? So these are not new topics to us but those rules do apply and I would argue that and Judge Tucker agreed that the causative link between what Kevin Berry did and Mr. Stengel did and what eventually happened in this Dragon Eddy case is simply too attenuated to sustain any kind of causation and there's a case that this court decided I won't burden the record with another case. I just want to say one other thing before I sit down. This case looks more complicated than it really is and the reason is that you have to ask if it caused harm what harm was it? Well the lawyers Berry and Stengel didn't cause the malpractice case against DeLuca obviously. They didn't cause the settlement of the malpractice case by Travelers Travelers insured DeLuca and is standing in DeLuca's now as a subrogate what is the claim that they actually are asserting? Why do they think they're entitled to contribution of anything? They've argued throughout the case that Berry's they say Berry's conduct didn't cause any harm at all. They've said when he committed malpractice it caused no harm. Okay, well if it caused no harm then he can't be a joint tortfeasor and if they were if DeLuca and Travelers standing in his shoes were Sanford it might make some sense. Sanford might have had a claim against somebody but Sanford doesn't assert any release to Berry and to Stengel. So there is no basis for this claim. Thank you. Thank you Mr. Leffert. Mr. Brill Good afternoon judges Christopher Brill, co-counsel of Travelers I'm here on rebuttal I would start with the observation there's been a lot of discussion of the facts and I don't have to tell the three of you the facts should all be considered in the light most favorable to us without any weighing of them here at all and so that's why we should focus as I think Judge Rendell mentioned on actually the statute itself. The statute and the cases the more recent cases say that a joint tortfeasor just requires two things it requires two or more people to commit a tort and for those torts to cause one indivisible injury that's all it requires. Well, proximate cause if it's at different times you have to show proximate cause of the same injury and how did you tell me how you satisfy the proximate cause This is how Judge when Sanford's went into the attorney number one's office and he gave them what Judge Jordan would view in our view and also consistent with the law as we are right now in the light most favorable to us three people who had nothing to do with what they happened told them to sue them in federal court, told them to sue them in RICO action and call them criminals. That's the advice he gave them He absolutely knew because RICO actions were around for a hundred years before that, that when you give a client really really bad information to sue somebody you have no basis to do that it's going to come back and bite you. He may have known but if the Sanfords were relying on his advice why is it predetermined that when they did that and I don't want to say found guilty but they would be defaulted and liable for three million dollars in their dragon eddies. Mr. Sanford was a mechanic by trade Mr. Stangle was a Harvard educated lawyer and they relied upon his advice at that point and when they did that. Doesn't that doom your probable cause? No it doesn't your honor I disagree with that legal conclusion and besides I don't think that's what we're here about today. There are cases that say a client even if they get bad advice from their lawyer are still responsible themselves for the consequence of what had happened. Stop for a second Mr. Brill because this is precisely the point Mr. Lefko repeatedly pressed on and I do want you to answer it he says that a necessary element of the dragon eddy action is a lack of good faith and that by definition the law says reliance on counsel means you're okay. Is he right or is he wrong about the law? Your honor it's irrelevant that whole topic. We're not here about a dragon eddy If it's true that a dragon eddy action has as an element of it that and that couldn't be satisfied here then how can that not be relevant to your assertion that the bad advice of Stanglenberry flows right through to the liability? Conceding for the moment it's relevant your honor then I would disagree that that's a legal conclusion Is he right about the law? No he's incorrect about the law So it's not an element of the dragon eddy action? The Sanfords are still responsible for the consequences of what they did even though they got on We're not here about that We're here about not dragon eddy which they want to play in the dragon eddy field because that works for them. We want to play on the field where we brought the actual lawsuit which is professional negligence. We're saying that they gave passive causation. You have to prove foreseeability and that involves The foreseeability judge again is when you give a client really bad advice to sue somebody that you have no basis at all to sue as the district court found here. You've got to know they're going to come back at you and they're going to file a dragon eddy action. That's one of the possibilities You've got to prove that they're a joint tort fee I'm glad you brought that up your honor because you don't have to anticipate or foresee the exact negligent act of a subsequent tort fee. You just have to foresee that something bad is going to happen So you don't have to foresee how attorney two or three screwed up Let's go back before proximate cause. You still have to find before you get to the whole proximate cause determination you have to show that they're a joint tort fee and there all we have to show is that they each committed torts and resulted in one indivisible injury and that's where Judge Tucker went off base She decided that there was more than one injury when there really wasn't. There was only one injury here with the multi-million dollar lawsuit If that's the one injury how can you not play on the dragon eddy field You've got to be on that field because that's where the multi-million dollar judgment comes down It's not the multi-million dollar lawsuit. It's the judgment Well the judgment for the multi-million dollar That's different from the multi-million dollar lawsuit itself With all due respect, your honor, no harm no foul Until they're required to pay money, there's no injury And so until the three million dollar verdict comes in, there's no harm. And there's no opportunity to sue. If that's the single injury and the defense to that would have been I relied on advice of counsel How can you win Call it joint tortfeasor, call it proximate How can you win? I would disagree with that legal conclusion Relying upon the advice of counsel 100% insulates you from any responsibility And there is a superior court case that says it does not Let me go back to the very last point that Mr. Lefkoe raised  in this joint tortfeasor's claim What did you get from them to stand in their shoes? I know you got a release, but a release of what? We got a release of all the liability from the joint tortfeasor, which is attorney number one and attorney number two. We got that as well as a release of DeLuca, attorney number three So from our perspective Travelers paid more of the harm than they should have since they were only one third of the procuring cost So Sanford's didn't give them a complete release? Mr. Lefkoe said Sanford's gave them a complete release too They released everybody except they reserved the right to travelers to pursue a right of contribution That's what they reserved You say they reserved that right That's what I'm trying to ascertain You only have to foresee that a drag on any actions might happen down the road You can even foresee You don't have to foresee that you're going to lose? You don't necessarily have to foresee the result What's the injury here? The injury to the supervisors The injury to the Sanford's The injury to them was the $3 million verdict Judgment So if that's the injury don't you have to foresee the injury? You don't have to foresee the exact monetary amount You just have to foresee that you're going to lose and there's going to be a legal consequence It has to be actual injury experience It's death It is a certain thing that happened that is what has to be foreseen The exact amount has to be foreseen You only have to foresee that your negligent advice is going to lead to your client getting sued You're getting a judgment against them That's the goal of every lawsuit $3 million is different from $1 million That doesn't affect the foreseeability issue It sounds to me you agree with the question I posed that the crux of this case is the the lawsuit that was filed without I absolutely agree with that That started it all That's where the train left the station All the liability flows out of that It stopped at number 2 and number 3 before it crashed The default judgment is not an intervening act or something that That would be up to the jury to decide If the jury was instructed on factual cause they would learn that there can be more than one factual cause as the court said in the harsh case where you had a manufacturer on a crash worthy case and a negligent driver They were both substantial factors At the time substantial factors was the standard They were both substantial factors in causing the result That's all we're saying here More than one tort feature can be a substantial factor Thank you very much We'll take the matter under advisement